**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| Trina K.,[1] | Case No. 2:25-cv-00421-BNW |
| Plaintiff, | |
| v. | **ORDER** |
| Frank Bisignano, Acting Commissioner of Social Security Administration[2], | |
| Defendant. | |

This case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Trina K's ("Plaintiff") application for benefits under Title II and Title XVI of the Social Security Act. Plaintiff moves this Court to reverse the Commissioner's decision and award benefits. ECF No. 11 at 2. The Commissioner opposes and asks this Court to affirm the Commissioner's decision. ECF No. 13 at 6. Plaintiff filed a reply reiterating her position. ECF No. 14. Plaintiff also moved for leave to file a supplemental brief, and this Court granted her motion. ECF No. 17. For the reasons discussed below, this Court reverses and remands.

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

[2] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisginano is substituted for Leland Dudek. No further action needs to be taken to continue this suit. 42 U.S.C. § 405(g).

## I.    BACKGROUND

On February 10, 2023, Plaintiff applied for disability insurance benefits under Title II ("SSDI") and supplemental security income ("SSI") under Title XVI of the Act, alleging an onset date of October 30, 2021.  AR[3] 238-47. Plaintiff's claim was denied initially, and on reconsideration.  AR 146-51, 157-64. Plaintiff requested a de novo hearing in front of an Administrative Law Judge ("ALJ"), and the appointed ALJ conducted a hearing on November 14, 2023. AR. 233-37, 66-96. On January 29, 2024, the ALJ issued a decision finding Plaintiff not disabled.  AR 40-62. The Appeals Council declined to review, and the ALJ's decision became final on January 22, 2025. AR 1-6. Plaintiff timely filed this action for judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff filed a new application for SSI on February 28, 2025. ECF No. 16-1 at 1. This application was under consideration while the present case was under judicial review. *See id.* On July 15, 2025, the Social Security Administration ("SSA") approved Plaintiff's claim for SSI, finding her disabled as of February 2025. *Id.* Plaintiff then filed a supplemental brief for relief asking this Court to reverse and remand the present case to reconcile the ALJ's decision denying benefits with the subsequent decision that Plaintiff qualified for SSI because she was disabled. ECF No. 16 at 6-7.

## II.    STANDARD OF REVIEW

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The Court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

---

[3] AR refers to the Administrative Record in this matter.  (Notice of Manual Filing (ECF No. 19).)

with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate,

should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### A. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. §404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the ALJ will make a finding of non-disability. *Id.* If the individual is not engaged in SGA, then the analysis proceeds to the step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. *Id.* If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). *See* 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work the individual performed within the past 5 years. *Id.* § 404.1560(b)(1)(i). The work must have also lasted long enough for the individual to learn the job and performed an SGA. *Id.* If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. *Id.* § 404.1520(a)(4)(iv). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If can do other work, then the ALJ makes a finding of non-disability. *Id.* Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going

forward with the evidence shifts to the Commissioner. *See Bowen*, 482 U.S. at 141–42. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Id.*

### B.  The ALJ Decision

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had had not engaged in substantial gainful activity since October 30, 2021. AR 46. At step two, the ALJ found Plaintiff had the following severe impairments: advanced degenerative disc disease status-post fusion surgery, obesity, and asthma. *Id.* at 46. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* at 48. Before proceeding to step four, the ALJ found Plaintiff retained the RFC to perform "light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)". *Id.* at 52. Specifically, the ALJ found evidence supported limitations to standing and walking 4 hours in an 8-hour workday, sitting for 6 hours in an 8-hour workday, and having the option to sit/stand at 30-minute intervals with a few minutes to change position. *Id.* at 49. The ALJ also found that Plaintiff must avoid ladders, ropes, scaffolds, crawling, unprotected heights dangerous moving machinery, concentrated vibrations, cold temperature extremes, concentrated humidity, and concentrated dust, gas, fumes and other pulmonary irritants. *Id.* at 49-50. At step four, and with the assistance of the vocational expert ("VE"), the ALJ found that Plaintiff could perform relevant past work as an insurance agent. *Id.* at 55. The ALJ also provided alternative findings at step five since the VE testified that a person with Plaintiff's vocational profile could perform other jobs existing in significant numbers. *Id.* at 55-56. The ALJ therefore found Plaintiff "not disabled" as defined in the Act. *Id.* at 57.

## II.    ANALYSIS

Plaintiff moves to reverse the Commissioner's decision and remand this matter for several reasons. ECF Nos. 11 at 2, 16 at 6-7. First, Plaintiff challenges the ALJ's RFC determination because the ALJ did not articulate clear and convincing reasons to reject Plaintiff's subjective testimony. ECF No. 11 at 8. Second, Plaintiff argues that the ALJ's step four finding that Plaintiff

could perform past relevant work as well as his alternative finding at step five were not supported by substantial evidence. *Id.* at 18-20. Third, Plaintiff argues that the Commissioner needed to consider Plaintiff's medical records from March 2024 to September 2024 as new and material evidence. *Id.* at 16. Plaintiff also contends that, even if the ALJ's errors in his analysis or the new evidence from March 2024 to September 2024 does not merit reversal and remand, the new and material evidence of Plaintiff's approved application for SSI as of February 2025 requires that the ALJ's decision be vacated and remanded to reconcile the ALJ's unfavorable decision with the subsequent determination to award SSI. ECF No. 16 at 6-7.

The Commissioner responds that the ALJ reasonably rejected Plaintiff's subjective testimony and that the VE's testimony amounts to substantial evidence supporting the ALJ's step four and alternative step five determinations. ECF No. 13 at 1, 4-5. The Commissioner also argues that the ALJ's decision remains supported by substantial evidence in spite of new evidence submitted to the Appeals Council. *Id.* at 3. The Commissioner did not respond to Plaintiff's supplemental brief arguing that the ALJ's decision should be vacated and remanded for the ALJ to reconcile his decision with the SSA's February 2025 decision to award SSI to Plaintiff.

### A. The ALJ did not err by relying on the VE's testimony in determining that Plaintiff could perform past relevant work.

Plaintiff argues that the ALJ's finding at step four that Plaintiff could perform past relevant work lacks the support of substantial evidence. ECF No. 11 at 18. She argues that the VE's testimony does not amount to substantial evidence because the VE did not differentiate between how Plaintiff performed her previous work with how it was generally performed in the national economy. *Id.* at 18. Plaintiff also argues that the ALJ's error is not made harmless by his alternative step five findings that there was other work in the national economy consistent with Plaintiff's RFC because there was not a significant number of jobs in the occupations he listed. *Id.* at 20. The Commissioner argues the VE's testimony was consistent with the *Dictionary of Occupational Titles* (DOT) and amounts to substantial evidence supporting the ALJ's step four findings. ECF No. 13 at 4.

At step four, a plaintiff has the burden of proving that she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). An ALJ may use either the "actually performed" test or the "generally performed" test when evaluating the plaintiff's ability to perform past work, ALJs are not required to consider both. *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (internal quotation marks omitted). Here, the ALJ found that Plaintiff has an RFC of light work with some limitations including sitting for six hours in an eight-hour workday. AR 49. The ALJ found that, based on the VE's testimony regarding individuals with Plaintiff's RFC and limitations, Plaintiff could perform her previous relevant work as an insurance agent both as actually and generally performed. *Id.* at 55.

There is a question as to whether Plaintiff could perform her work as actually performed, given that her RFC limited her to sitting for six hours per day and her work history report indicated that she sat eight hours per day in her previous work as an insurance agent. AR 49. Although a plaintiff bears the burden of proving she cannot perform past relevant work, an ALJ bears the duty to "make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). Here, the ALJ did not consider the discrepancy between Plaintiff's work as actually performed and her limitation to sitting for only six hours in an eight-hour workday. But regardless of whether Plaintiff could perform her work as actually performed, there was sufficient evidence in the record for the ALJ to conclude she could perform her job as generally performed. *See Stacy*, 825 F.3d at 570.

The ALJ is obligated to adequately develop the record at step four, even though the plaintiff has the burden of proving she cannot perform her past relevant work as generally performed. 20 C.F.R. § 404.1545(a)(3); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). However, the obligation to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). One such obligation is triggered when there are "obvious and apparent" conflicts between VE testimony and the DOT. *Lamear v. Berryhill*, 865 F.3d 1201, 1025 (9th Cir. 2017).

Plaintiff argues that the VE did not explain the discrepancy between the fact that "insurance agent" is a sedentary position and that Plaintiff could only sit for six hours in an eight-hour workday. ECF No. 11 at 19. But Plaintiff does not provide any evidence as to the requirements of "insurance agent" under the DOT. Plaintiff only argues that the Ninth Circuit recognizes that a worker must be able to sit through most or all of an eight-hour workday to be able to work the *full range* of sedentary jobs. ECF No. 11 at 19 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999)) (emphasis added). To the extent that Plaintiff is arguing that the ALJ had a duty to make a more extensive conflicts inquiry, it is not "obvious or apparent" that an insurance agent under code 250.257-10 in the DOT would be required to sit for at least eight-hours in a day. *Lamear*, 865 F.3d at 1205. Thus, the ALJ did not have an obligation to inquire further, and the VE's testimony supported the ALJ's finding that Plaintiff could perform past relevant work as generally performed. Because the ALJ did not err at step four, it is unnecessary for this Court to consider Plaintiff's additional argument that the ALJ's alternative step five finding fails to render any error at step four harmless.

### B.   The ALJ erred in partially rejecting Plaintiff's subjective pain testimony

Plaintiff argues that the ALJ failed to articulate specific, clear, and convincing reasons to reject her subjective symptom and limitation testimony. ECF No. 11 at 8. She argues that the ALJ misconstrued her testimony and relied on medical records that showed greater function to discount her testimony during periods of worse functioning. *Id.* at 15. The Commissioner argues that Plaintiff's testimony as to her ability to participate in daily activities undermined her subjective pain and limitation testimony. ECF No. 13 at 1. The Commissioner also argues that Plaintiff's testimony is undermined by her objective medical records that show she was "amenable to treatment". *Id.* at 2.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). A claimant is not required to

show her impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could have reasonably caused some degree of that symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

Plaintiff testified that prior to having spinal fusion surgery in 2022 she was experiencing back pain that was radiating into the buttock and down the leg. AR 77. She testified that while she experienced some benefit after surgery, when she was "overdoing it" the pain still went into her buttock and down the leg. *Id.* She testified that although the pain was no longer so severe in her leg that she could not walk, if she performed any lifting or twisting during housework, she needed to lie down and use a heating pad. *Id.* She also testified to only being able to stand 20 to 30 minutes at a time and sit for only 20 to 30 minutes at a time. *Id.* at 78.

For the first step of the analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 51. For the second step, the ALJ considered Plaintiff's testimony as to her symptoms and compared that testimony to her medical records. *Id.*

**1. The supposed inconsistencies identified by the ALJ between Plaintiff's activities and her testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit her testimony.**

At step two of the credibility analysis, the ALJ found that Plaintiff's testimony as to her symptoms was not entirely consistent with her testimony regarding daily living activities. AR 51. The ALJ found that despite Plaintiff's alleged limitations, she was able to participate in many typical activities of daily living. *Id.* at 50. He specifically highlighted that she described no need for assistance with personal care activities and that she was able to drive over multiple days with "breaks every six hours". *Id.* He also noted that Plaintiff testified that she goes to the gym to perform physical therapy exercises, including walking on the treadmill for up to 15-20 minutes. *Id.* The ALJ stated that per Plaintiff's function report, Plaintiff was able to do tasks such as

housework, laundry, dishes, vacuuming, and cooking dinner during a typical day. *Id.* at 51. She also had babysat her grandchildren during the relevant period when she was living with them. *Id.*

First, the ALJ's findings inaccurately describe Plaintiff's testimony. Plaintiff did testify that she drove over multiple days to move across the country, but she specifically stated that she had to stop frequently and had to completely stop for the day after six hours. *Id.* at 79. This suggests that Plaintiff had to take short-term breaks more often than every six hours. She also testified to having babysat her grandchildren when she lived in Missouri but stated that it became increasingly difficult because of her pain and she had to stop. *Id.* at 81. As to her physical therapy exercises, Plaintiff specifically stated that she had to back off using weights because that was causing pain. *Id.* She testified that at the time of the hearing she could do some unweighted squats, stretch, and use the treadmill for up to 15 to 20 minutes before needing to stop. *Id.* at 80-81, 84. This is consistent with other pieces of Plaintiff's testimony where she said she was limited in carrying weight and that she could stand for only about 20 to 30 minutes before needing to lie down. *Id.* at 78, 83.

Second, Plaintiff's daily activities as described in her function report and her testimony were consistent with her statements about the impairments caused by her pain. The Ninth Circuit has warned that ALJs must be cautious in concluding that daily activities are inconsistent with testimony about pain because "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 80 F.3d 1273, 1282 (9th Cir. 1996)). Plaintiffs are not required to be completely incapacitated to be eligible for benefits, and many home activities may not easily transfer to a work environment where it may be difficult or impossible to rest periodically. *Id.* Thus, courts have held that a plaintiff's level of activity only has bearing on her credibility where her claimed limitations are inconsistent with her activities. *Id.* (internal citation omitted).

In her March 2023 function report, Plaintiff reported that during a typical day she did as much housework as she could including laundry, dishes, and vacuuming. *Id.* at 299. But she also stated that she would constantly need to lay down to rest her back. *Id.* This is consistent with

Plaintiff's testimony at the hearing where she stated that she was limited in doing her daily chores. *Id.* at 81. She stated that she had to lay down on her heating pad after doing any housework because of the strain of lifting and twisting. *Id.* at 77. She also testified that she had to do laundry almost every other day to keep the laundry basket from getting too heavy or she would be unable to lift it. *Id.* at 83. Plaintiff's daily activities were consistent with her statements about the impairments caused by her pain. Accordingly, the ALJ erred by failing to provide clear, convincing, and specific reasons to disregard Plaintiff's subjective testimony as it related to her daily activities. *See Lingenfelter*, 504 F.3d at 1036.

**2.   The ALJ failed to provide clear, convincing, and specific reasons that Plaintiff's testimony was inconsistent with her medical record.**

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical record. AR 51. The ALJ summarized Plaintiff's medical records before, during, and after her spinal fusion surgery. *Id.* at 51-52. After providing his summary, the ALJ found that, while Plaintiff had experienced significant lower back issues, she improved substantially with her spinal fusion. *Id.* at 52.

As explained in further detail blow, the ALJ's summary undermines his conclusion. The ALJ noted that, before the relevant period, Plaintiff had an orthopedic evaluation for back pain with radiation into the left leg. AR 51. Plaintiff's records showed that she had been treating that pain through physical therapy, chiropractic care, acupuncture, and pain management up to November 2020. *Id.* at 51, 430. In February 2021, Plaintiff had her first epidural steroid injection. *Id.* at 51, 392. The relevant period began in October 2021, and an MRI taken in November 2021 revealed Plaintiff had multilevel degenerative changes in her spine. *Id.* at 43, 51, 384. Plaintiff's doctor determined the degenerative changes were worst at L5-S1, and records note that he was considering recommending spinal fusion surgery. *Id.* at 51, 384-85. In March 2022, Plaintiff underwent "a posterolateral instrument fusion at the L4-S1 level". *Id.* at 51, 342. Plaintiff's records show that Plaintiff reported improvement with her legs and only slight pain in her lower

back and upper left buttock. *Id.* at 51, 351, 355-56. Updated imaging documented that the instrumented fusion and construct looked fine. *Id.* at 51, 351.

By October 2022, Plaintiff began to complain about increased back pain. AR 52, 585. The ALJ's summary and Plaintiff's records indicate that at her October 2022 appointment, Plaintiff was prescribed Gabapentin for her back pain. *Id.* at 52, 590. Plaintiff then presented to pain management in December 2022 where she reported bilateral lower back pain and a rare radicular pain into the right thigh. *Id.* at 52, 569. Examination revealed decreased range of motion, and the specialist recommended physical therapy, updated imaging, and a referral to neurosurgery. *Id.* at 52; 573-74.

Despite this, the ALJ noted that Plaintiff seemed to be doing well at a January 2023 appointment with her record reflecting a normal gait, a negative straight leg raise bilaterally, and normal motor strength in the lower extremities. *Id.* at 52, 567. By April 2023, however, the ALJ noted that Plaintiff was referred to a spine pain center because she was reporting ongoing low back pain with some radiculitis and buttock pain. *Id.* at 52, 538. In May 2023, Plaintiff had a positive straight leg raise on the right side and evidence of lumbar tenderness. *Id.* at 52, 529. This resulted in her doctor recommending that Plaintiff restart steroidal epidural injections. *Id.*

The last piece of objective medical evidence the ALJ reviewed was from December 2023. AR 52. In December 2023, a CT scan indicated a potential loosening of the screws supporting Plaintiff's spinal fusion. AR 52, 65. An MRI around the same time also indicated degenerative changes in the lumbar spine at L5-S1 and mild degenerative changes at other levels of the lumbar spine. *Id.* at 52, 63-65. Despite evidence of degenerative changes, increasing pain levels, and the increase of treatment methods that were used prior to surgery (pain management, physical therapy, and steroidal injections), the ALJ ultimately found that Plaintiff improved substantially with the spinal fusion. *Id.* at 52.

Both the objective medical record and the ALJ's own summary are in opposition to the ALJ's conclusion that Plaintiff improved substantially with the spinal fusion. Rather, the record and summary reflect that Plaintiff experienced a brief period of improvement, followed by a slow deterioration of function. Thus, the ALJ's reliance on Plaintiff's improvement immediately

following surgery is not a clear, convincing, or specific reason to reject Plaintiff's subjective testimony as inconsistent with the record. *Smith v. Kijakazi*, 14 F.4ᵗʰ 1108, 1113 (9ᵗʰ Cir. 2021) (finding that an ALJ erred by disregarding Plaintiff's testimony as inconsistent where his condition had changed throughout the relevant period). This Court finds the ALJ erred in discounting Plaintiff's subjective symptom testimony as inconsistent with the medical record.

An ALJ's error is harmless only if it is found to be "inconsequential to the ultimate non-disability determination" and if the Court "can confidently conclude that no reasonable ALJ, when [not making the same error] could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). Here, the error is not inconsequential because if the ALJ had credited Plaintiff's subjective pain and limitation testimony he may have concluded that Plaintiff's condition had not been amenable to treatment, and Plaintiff's claim of disability would not have been undermined. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (holding that evidence of medical treatment successfully relieving symptoms undermined the plaintiff's claim of disability). Likewise, another ALJ, crediting Plaintiff's subjective pain and limitation testimony as consistent with the record could have found that Plaintiff was disabled. The ALJ's contradictory finding was therefore not harmless.

**C. Remand is warranted so that the ALJ can consider Plaintiff's new evidence.**

Plaintiff argues that remand is warranted due to two different types of new and material evidence. First, Plaintiff argues that the medical records and treatment notes from March 2024 to August 2024 that she submitted to the Appeals Council were new and material evidence that was related to the period on or before the ALJ's decisions. ECF No. 11 at 16. Second, she argues that the SSA's determination that she was disabled as of February 2025 based on a subsequent application for benefits is new and material evidence related to the period on or before the ALJ's decision. ECF 16 at 5-6. Plaintiff argues that to reconcile the SSA's determination that she was disabled for the purposes of receiving SSI with the ALJ's determination in the present case, the ALJ's determination must be remanded. *Id.* at 6-7. Although these two arguments are related, this Court addresses each in turn.

### 1. Plaintiff's new evidence from March 2024 to September 2024 should have been considered.

Social Security regulations permit claimants to submit new and material evidence to the Appeals Council. *See* 20 C.F.R. § 416.1470(b). Once received, the Council must consider that evidence in determining whether to review the ALJ's decision so long as the evidence relates to the period on or before the ALJ's decision. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); *see also* 20 C.F.R. § 416.1470(b).  Although the reviewing court lacks jurisdiction to review the ruling of the Appeals Council, the court may consider evidence rejected by the Appeals Council to determine whether the ALJ's decision was supported by substantial evidence in light of the record as a whole. *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011); *see also* 42 U.S.C. § 405(g) (providing for remand where there was a "failure to incorporate [new] evidence into a prior proceeding."). To justify remand, the plaintiff must show that the new evidence is material and that there is good cause for the failure to submit such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g).

Plaintiff could not possibly have submitted records obtained between March 2024 and September 2024 to the ALJ prior to his decision January 2024 because the appointments had not yet occurred. Accordingly, Plaintiff has shown good cause for the failure to submit the evidence into the record before the ALJ's final decision. *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982). Thus, this Court must determine whether Plaintiff's new evidence is material to the issue presented before the ALJ and this Court.

Evidence is material only where it directly concerns the issues before the ALJ and presents a reasonable possibility that the evidence would change the outcome. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). The Ninth Circuit has understood this rule to require that the new evidence illuminate the plaintiff's condition during the period of time considered by the ALJ. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 512 (9th Cir. 1989). Evidence of a condition linked to an ongoing disability alleged during the hearing is material, even if that evidence was gathered later. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984).

Here, the relevant period for the ALJ's decision was between Plaintiff's onset date of October 30, 2021, and the ALJ's decision on January 29, 2024. AR 40, 43. Although the new evidence Plaintiff wished to be considered new is dated from March 2024 to September 2024, it is linked to the same back pain Plaintiff testified to at the hearing an ongoing disability alleged during the hearing. AR 9-34. During the hearing Plaintiff testified to having back pain that radiated to her buttock and down her leg. *Id.* at 77. The new evidence includes a report from an orthopedic evaluation on March 7, 2024, where Plaintiff reported she was experiencing low back pain with radiation to the buttock and down the leg. *Id.* at 33. At that time, Plaintiff reported that the onset of her pain had been gradual and had been occurring for five years. *Id.* at 32. These five years encompass the relevant period. The report also detailed Plaintiff's medical history, including her March 2022 spinal fusion surgery and conservative measures she had taken during the relevant period including physical therapy and pain management. *Id.* at 29. Accordingly, the new evidence is linked to the ongoing back pain that the ALJ found to be a significant impairment and is probative of the extent of that impairment during the relevant period. *See Sanchez*, 812 F.2d at 512.

There is also a reasonable possibility that the ALJ would have reached a different conclusion had this evidence been before him. *See Mayes*, 276 F.3d at 462. As discussed in detail above, the ALJ disregarded Plaintiff's subjective symptom and limitation testimony as inconsistent because Plaintiff had improved substantially after her spinal fusion surgery in March 2022. AR 52, 54.  Plaintiff's new evidence, however, shows that her spinal fusion ultimately failed, resulting in a second surgery in August 2024. *Id.* at 9-11. The deterioration that led to Plaintiff's second spinal fusion is not only documented throughout Plaintiff's new evidence, but also throughout the evidence from the relevant period. Considering that the new evidence from March 2024 to September 2024 supports that Plaintiff experienced increased pain and physical limitation because her spinal fusion was failing, there is a reasonable possibility that the ALJ would have found Plaintiff disabled. *Mayes*, 276 F.3d at 462.

Since Plaintiff's new evidence is material to the issues before the ALJ and this Court, and since the Plaintiff has good cause for admitting the evidence after the ALJ's decision, remand is

appropriate so that the ALJ can reconsider his decision in light of the new evidence. 42 U.S.C. § 405(g).

### 2. Plaintiff's argument that the ALJ's determination must be remanded to be reconciled with the February 2025 grant of benefits is premature

Plaintiff argues that the SSA's finding that Plaintiff was disabled as of February 2025 is new and material evidence that must be reconciled with the ALJ's January 29, 2024, determination. ECF No. 16 at 4. As discussed above, Plaintiff must show that this new evidence is material and that there is good cause for the failure to submit such evidence into the record in a prior proceeding to justify remand. 42 U.S.C. § 405(g).

In cases in which a plaintiff is denied benefits on an initial application but awarded benefits on a subsequent one, the Ninth Circuit looks to whether the second application involved different medical evidence, a different time period, or a different age classification. *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001). The "'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application indicates that further consideration of the facts is appropriate to determine whether the outcome of the first application should be different." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010). But if the conflicting decisions could be easily reconciled based on different medical evidence, a different time period, or a different age classification, remand is not appropriate. *See Bruton*, 268 F.3d at 827; *see also Evan v. Colvin*, 525 Fed. App'x. 582, 584 (9th Cir. 2013).

Given the unique posture of this case in which this Court has determined that remand is appropriate for the ALJ to consider the new evidence from March 2024 to September 2024, it is difficult to determine whether the ALJ's January 2024 denial of benefits is easily reconcilable with the SSA's grant of benefits starting February 2025. This Court cannot say what the outcome of remand will be once the ALJ considers Plaintiff's 2024 medical records as part of the entire record. If, for example, the ALJ determines on remand that Plaintiff was disabled during the relevant period, there would be nothing to reconcile between that decision and the SSA's subsequent determination. Accordingly, Plaintiff's argument that the ALJ's determination should be remanded to be reconciled with the SSA's subsequent grant of benefits is premature.

### III.      CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal and remand (ECF No. 11) is GRANTED.

**IT IS FURTHER ORDERED** that this case REMANDED for consideration of Plaintiff's new evidence from March 2024 to September 2024.

**IT IS FURTHER ORDERED** that on remand the ALJ carefully consider whether there are specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment in favor of Plaintiff and close this case.

DATED: January 20, 2026

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE